IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOW ANDERSON, | } |
| *Plaintiff*, | } |
| v. | } Civil Action No. H-05-3652 |
| ZURICH AMERICAN INSURANCE COMPANY, | } |
| *Defendant*. | } |

**OPINION AND ORDER**

Presently before the Court in this administration of insurance benefits case are Defendant Zurich American Insurance Company's (Zurich American) motion to dismiss for lack of subject matter jurisdiction (Doc. 253), motion for summary judgment (Doc. 256), and supplemental motion to dismiss for lack of subject matter jurisdiction (Doc. 273). Upon review and consideration of these motions, the responses and replies thereto, and the controlling legal authority, the Court finds that the motion and supplemental motion to dismiss for lack of subject matter jurisdiction should be denied, and the motion for summary judgment should be granted.

I.  Relevant Facts and Procedural Background

In the early summer of 2002, Plaintiff Dow Anderson (Anderson) took a job with Defendant American Tank and Vessel, Inc. (ATV) as an assistant foreman in McComb, Mississippi. (Pl.'s Dep., Doc. 256 Ex. I at 79). While working in Mississippi, Anderson injured himself. (Doc. 263 Ex. A). He was examined at a nearby emergency room and reported his injury to ATV's safety officer. (*Id.*). After several days, he returned home to Crosby, Texas.

At the time of Anderson's injury, ATV maintained a Workers Compensation and Employers Liability Insurance Policy (the Policy) with Defendant Zurich American. (Policy,

Doc. 142 Ex. A). The Policy was purchased through Zurich American's broker, Willis of Alabama, Inc. (Willis), in 2002. (*Id.*). It provides that Zurich American will insure all of ATV's workers' compensation liability, that Zurich American has sole claims settlement authority, and that ATV has no control over the administration of benefits. (*Id.*).

In late July or early August 2002, just after Anderson received his first workers' compensation check, he telephoned Carmen Judd (Judd), the Zurich American adjuster assigned to his claim.[1] (Pl.'s Dep., Doc. 263 Ex. M at 118). Anderson contacted Judd because he was displeased with the amount of his workers' compensation weekly benefit under Mississippi law. (Pl.'s Dep., Doc. 263 Ex. M at 121-22). Anderson alleges that, during this conversation, Judd advised him that he could not collect workers' compensation benefits under Texas law. At her deposition, Judd testified that it was her understanding that Anderson was hired, had worked in, and was injured in Mississippi. (Judd Dep., Doc. 263 Ex. N at 83). Judd further testified that Anderson's claim was presented to her as a Mississippi claim. (*Id.*). Anderson never told Judd that he wanted to file a claim in or that he wanted his claim transferred to Texas. (*Id.*). Furthermore, Anderson himself never filed a workers' compensation claim in Texas. (*Id.*).

In January 2003, a dispute arose over whether Anderson should receive back surgery. Dr. Stephen Esses (Dr. Esses) saw Anderson for a consultation on January 23, 2003, at which time he recommended spinal surgery pending clearance from Anderson's internist. (Doc. 256, Ex. A at 2). Zurich American denied Dr. Esses' January 31, 2003, surgery pre-certification request, as well as his February 10, 2003, reconsideration request, because it found that the procedure was not medically necessary. (Doc. 263 Ex. I). Zurich American subsequently arranged for Anderson to see Dr. Darrell Hanson (Dr. Hanson) for a second opinion. He opined:

---

[1] Judd is a claims adjuster for workers' compensation claims in Tennessee, Kentucky, Mississippi, and Arkansas. (Judd Dep., Doc. 263 Ex. N at 11).

> This is a very difficult patient to evaluate. I would be somewhat concerned about doing a 2-level anterior cervical discectomy and fusion without a little bit more information. Because his MRI is somewhat inconclusive, I probably would get a CT myelogram. His MRI doesn't look as bad as his clinical picture would suggest. I suspect that the CT myelogram might show us a lot more information about compression of nerve roots. Also, I would recommend some diagnostic nerve root injections in his neck particularly on the right side at C6 and C7. Apparently, he had trigger point injections but these were not done under x-ray and it is hard to know where the injections actually went.

(Doc. 256 Ex. E at 2).

After several months of conservative treatment, Anderson saw Dr. Esses for a follow-up visit on July 21, 2003. (Doc. 256 Ex. G). Dr. Esses reviewed the July 14, 2003, MRI of the C5-6 and C6-7 discs and found significant herniations of the discs at both levels. (*Id.*). During the exam, Anderson continued to show "marked pain with range of motion of the cervical spine." (*Id.*). Additionally, he had "weakness in his right biceps" and "pain with resisted motor testing of his deltoid on the right side." (*Id.*). As a result, Dr. Esses offered to perform an anterior C5-6 and C6-7 discectomy, interbody fusion, and plate procedure. (*Id.*). After speaking to Dr. Esses, Zurich American sent Anderson to Dr. Hanson for a second opinion. (Doc. 256 Ex. F at ZA0306). Anderson saw Dr. Hanson on September 23, 2003, and Dr. Hanson concluded:

> Failed conservative management, reasonable to perform an anterior cervical discectomy with fusion. This is based on CT myelogram as well as MRI done in July. Concur with Dr. Esses opinion for surgery. MRI dated July 2003 shows definite herniation at C5-6 and C6-7.

(*Id.*). On October 1, 2003, Zurich American advised Dr. Esses that it would approve his request for surgery because it was medically necessary. (Doc. 256 Ex. H). Accordingly, Anderson had surgery on October 14, 2003. (*Id.*).

On September 8, 2005, Anderson filed this lawsuit seeking damages attributable to Zurich American's delay in authorizing surgery. His amended complaint states claims for declaratory judgment, negligent misrepresentation, and insurance code violations. In its March 26, 2007, Memorandum Opinion and Order (Doc. 216), the Court (1) granted summary judgment on all of Anderson's claims against ATV, (2) granted summary judgment on Anderson's negligent misrepresentation claim against Zurich American, and (3) denied summary judgment on and stayed Anderson's bad faith and insurance code claims against Zurich American.

Mississippi requires workers' compensation claimants to receive a final ruling from the Mississippi Workers' Compensation Commission (MWCC) before bringing their bad faith and statutory claims. *Walls v. Franklin Corp. et al*, 797 So. 2d 973, 977 (2001). Because Anderson brought suit without receiving a final determination from the MWCC, his claims would be barred in Mississippi. To allow Anderson to proceed in this Court without seeking a final determination from the MWCC would impinge on the MWCC's exclusive jurisdiction under Mississippi law. Accordingly, the Court, in its March 26, 2007, Memorandum Opinion and Order (Doc. 216), found that, before Anderson could prevail on his claims, he had to exhaust his administrative remedies and establish that the surgery requested by Dr. Esses was reasonable and necessary in January 2003. As such, the Court stayed Anderson's bad faith and insurance code claims pending a final determination by the MWCC.

On November 15, 2007, the MWCC issued an order stating, in pertinent part,

> . . . the operation performed on Claimant by [Dr. Esses] on or about October 14, 2003 was medically necessary as a result of Claimant's compensable injuries sustained while working for [ATV], that the Employer and Carrier were obligated to furnish same, as they have done, and that Claimant has exhausted the administrative remedies available to him before the MWCC with regard to the stated issues.

(Doc. 256 Ex. B at 3-4). Accordingly, the Court issued an order on January 4, 2008, granting Anderson's request to reinstate this case to the active docket.

II.         Motion to Dismiss for Lack of Subject Matter Jurisdiction[2]

The Court, in its March 26, 2007, Memorandum Opinion and Order (Doc. 216), found that, before Anderson could prevail on his bad faith and insurance code claims, he had to exhaust his administrative remedies and establish that the surgery requested by Dr. Esses was reasonable and necessary in January 2003. Although the MWCC established that the operation performed by Dr. Esses was medically necessary, it failed to indicate if the surgery was medically necessary when it was initially requested in January 2003 or when it was actually performed in October 2003. The MWCC did, however, conclude that Anderson had exhausted his administrative remedies and that he was entitled to pursue his claims before this Court.

In its motion and supplemental motion to dismiss, Zurich American contends that the Court lacks subject matter jurisdiction pursuant to *Schwartz v. Ins. Co. of the State of Pa.*, No. 01-07-00193-CV, 2008 WL 4670516, (Tex. App.—Houston [1st Dist.] 2008). The court in *Schwartz* held that, because neither the claimant's petition nor the record showed that the claimant had exhausted her administrative remedies and obtained a finding from the Texas Workers' Compensation Commission (TWCC) that foot surgery was medically necessary when it was first requested, the trial court lacked subject matter jurisdiction over the claimant's suit for damages arising from the insurer's allegedly unreasonable delay and denial in authorizing her requested surgery. *Schwartz*, 2008 WL 4670516, at * 3. Zurich American, therefore, argues that

---

[2] Defendant Zurich American has filed a motion and a supplemental motion to dismiss for lack of subject matter jurisdiction. (Docs. 253 & 273). The supplemental motion was "simply a notification to the Court that the Houston First Court of Appeals had submitted a revised opinion in *Schwartz* overruling the Appellant's motion for rehearing." (Doc. 273 at 1).

Anderson cannot establish the Court's jurisdiction here because there is "no required finding of his entitlement to surgery when first requested in January 2003." (Doc. 253 at 8).

The Court disagrees with Zurich American's contention and finds that the *Schwartz* case is distinguishable. Although the MWCC failed to state that the surgery was medically necessary when it was requested in January 2003, it did find that Anderson had exhausted his administrative remedies. In *Schwartz*, the appellate court affirmed the trial court's dismissal because the plaintiff had failed to exhaust her administrative remedies before the TWCC and obtain a TWCC finding that her foot surgery was medically necessary when she first requested it. This holding involves both a temporal aspect and one dealing with the exhaustion of remedies. The Court must, therefore, deny the defendant's motion and supplemental motion to dismiss for lack of subject matter jurisdiction.

III.     Motion for Summary Judgment

   A.   Legal Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party

fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence

to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

  B.  Evidentiary Issues

In its reply, Zurich American objects to the following four statements in the First Supplemental Affidavit of Dow Anderson.[3]  (Doc. 263 Ex. O).

> 1. "In 2002, I was contacted by Mack Hooker and informed that [ATV] had asked him to assemble a crew to construct metal tanks for a power plant near McComb, Mississippi. Mr. Hooker asked me to apply for that work." (*Id.* at ¶ 3).
>
> 2. " . . . Zurich did not have the right to delay the recommended surgery while it was seeking a second opinion." (*Id.* at ¶ 20).

---

[3] The Court notes that Anderson did not file a response to Zurich American's evidentiary objections.

3. "... in April 2003 Zurich could have received Dr. Hanson's second opinion confirming Dr. Esses diagnosis and recommendation for surgery." (*Id.* at ¶ 21).

4. "... Zurich was prohibited from employing Dr. Metoyer to consider the appeal of Zurich's denial of the recommended surgery." (*Id.* at ¶ 24).

For the reasons set forth below, the Court shall sustain each of these objections.

Zurich American objects to the first statement on hearsay grounds. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Unless covered within an exception, hearsay evidence is inadmissible. Fed. R. Evid. 802. The hearsay rule applies with equal force in the context of summary judgment evidence. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (noting that hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56). Anderson's account of statements made to him by Mack Hooker (Hooker) is being offered to prove the truth of the matter asserted therein and, as such, is inadmissible hearsay.

The second, third, and fourth statements are not based on Anderson's personal knowledge. "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Anderson attempts to introduce evidence about what Zurich had the right to do, when it could have received a medical opinion, and whether it was prohibited from employing a specific doctor. This information falls outside the bounds of Anderson's personal knowledge. Furthermore, the second and third statements are both conclusory and speculative. The Court, therefore, sustains Zurich American's objections and strikes these statements from the record.

C.  Analysis

1.  Count 3 – Bad Faith

Defendant Zurich American argues that the reasonable medical dispute over the necessity of Anderson's spinal surgery precludes a finding of bad faith. Anderson disagrees, however, and asserts that the only conflict in the medical evidence was one created by Zurich American's doctor shopping and its request that Anderson see Dr. Hanson. Anderson also alleges that Zurich American purposefully withheld medical records from Dr. Hanson in order to create the appearance of a conflict in the medical evidence. There is, however, no evidence to support this allegation, and Anderson's mere suspicion does not raise a factual issue. Accordingly, the Court agrees with Zurich American's position on the bad faith claim.

Pursuant to Texas law, the insurer owes a duty of good faith and fair dealing to the insured when processing claims. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). A cause of action for breach of this duty exists when the insurer "has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* at 459 (citing *Arnold*, 725 S.W.2d at 167). "In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment on the claim." *Id.* (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988). But "[a]s long as the insurer has a reasonable basis to deny or delay a payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* (citing *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597,

600 (Tex. 1993)).

In *Henry v. Mutual of Omaha Ins. Co.*, 503 F.3d 425 (5th Cir. 2007), the Fifth Circuit found that there was at least a bona-fide dispute as to the medical necessity of the patient's treatment, and the process that the insurance company employed to resolve the dispute was "sufficiently thorough and objective to satisfy the reasonable-basis standard." *Id.* at 429. Additionally, the Fifth Circuit found that the insurance company's doctors were not "patently off-base in their analysis and conclusions" about the treatment prescribed by the patient's doctors and that the professional justifications underlying the proffered recommendations relied on by the insurance company "certainly were not illegitimate or specious." *Id.*

In the instant case, Dr. Esses recommended that Anderson undergo surgery. Zurich American then sent Anderson to Dr. Hanson for a second opinion.[4] Dr. Hanson, however, disagreed with Dr. Esses and instead recommended conservative treatment. He also ordered additional diagnostic tests including a CT myelogram and nerve root injections. After several months, Anderson's condition did not improve. As such, Anderson went back to Dr. Esses. After reviewing the new MRI of the C5-6 and C6-7 discs and examining Anderson, Dr. Esses again recommended surgery. Accordingly, Zurich American sent Anderson back to Dr. Hanson for a second opinion on Dr. Esses' latest recommendation. Dr. Hanson concluded that the conservative treatment had failed and that it would be reasonable to perform surgery. He based his decision on the patient's condition, a CT myelogram, and the July MRI which he concluded showed a definite herniation at C5-6 and C6-7.

The Court points out that Dr. Hanson's deposition testimony demonstrates that he is an independent physician without significant or extensive ties to Zurich American.

---

[4] Anderson attempts to argue that Zurich American was "doctor shopping" in violation of Miss. Code § 71-3-15(1). The Court has reviewed this provision and concludes that this statute does not prohibit an insurance company from sending a claimant for a second opinion or independent medical examination.

- 11 -

Q: Okay. As far as your relationship with the insurance carrier, do you have any relationship with that particular insurance carrier?

A: Not that I know of, no.

Q: Do you – how often do you do independent medical exams or second opinions?

A: Very, very rarely, very rarely.

Q: I'm assuming you're not dependent on them for your income?

A: No, I'm not.

Q: You're able to support yourself otherwise?

A: Yes.

Q: And you feel like when you rendered that opinion, you were doing that as your true opinion?

A: Yes. I – you know, I looked at my – you know, just looking at all the patients I see, I think, you know, that kind of workers' compensation, everything, is no more than 2 percent of my practice, so I certainly – you know, doesn't make a difference to me, you know, if somebody, you know, doesn't like my decision or not. It really is just kind of based on what I see and what I think.

(Hanson Dep., Doc. 256 Ex. C at 22-23).

The Court finds that the reasonable medical dispute between Dr. Esses and Dr. Hanson about whether Anderson needed spinal surgery when it was first requested precludes a finding of bad faith. The Court's finding is bolstered by Dr. Hanson's deposition testimony.

2. Count 4 – Violation of Chapter 541 of the Texas Insurance Code

Anderson asserts that Zurich American violated Texas Insurance Code §§ 541.052, 541.060, and 541.061. Each of these allegations is based on Anderson's contention that Judd told him that he was not entitled to workers' compensation benefits under Texas law. In its

motion for summary judgment, Zurich American argues that Anderson's claims must fail. For the reasons set forth below, the Court agrees with Zurich American and finds that summary judgment should be granted in its favor.

With respect to Anderson's first claim, Texas Insurance Code § 541.052 provides, in pertinent part, that

> [i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public or directly or indirectly cause to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

TEX. INS. CODE § 541.052(a). This section applies to advertisements, announcements, or statements made, published, disseminated, circulated, or placed before the public. TEX. INS. CODE § 541.052(b). Even if the Court assumes that Judd did, in fact, tell Anderson he could not collect workers' compensation benefits under Texas law, Anderson's claim under TEX. INS. CODE § 541.052 must fail. Anderson has failed to provide the Court with any evidence that Zurich American placed before the public any advertisement, announcement, or statement. According to Anderson, Judd allegedly made this statement to him over the telephone.

Before the Court addresses the merits of Anderson's claims under Texas Insurance Code §§ 541.060 and 541.061, it must determine whether Anderson would have been eligible for workers' compensation benefits in Texas. Texas Labor Code § 406.071, which deals with extraterritorial coverage, states as follows:

> (a) An employee who is injured while working in another jurisdiction or the employee's legal beneficiary is entitled to all rights and remedies under this subtitle if:

> (1) the injury would be compensable if it had occurred in this state; and
>
> (2) the employee has significant contacts with this state or the employment is principally located in this state.
>
> (b) An employee has significant contacts with this state if the employee was hired or recruited in this state and the employee:
>
> > (1) was injured not later than one year after the date of hire; or
> >
> > (2) has worked in this state for at least 10 working days during the 12 months preceding the date of injury.

TEX. LAB. CODE § 406.071. Although Anderson was injured while working in Mississippi and his injury would have been compensable if it had occurred in Texas, he did not have significant contacts with nor was his employment principally located in Texas. Anderson was neither hired nor recruited in Texas and, as such, did not have significant contacts with the state.

The parties do not dispute that ATV hired Anderson in Mississippi. They do, however, disagree on whether ATV recruited Anderson in Texas. Anderson heard about the job at ATV from his friend, Mack Hooker (Hooker), who was not yet an employee of ATV. (Pl.'s Dep., Doc. 256 Ex. I at 79). The two men drove together to Lucedale, Mississippi, where Anderson completed an application for employment and received safety instruction. (*Id.* at 80) (Anderson Aff., Doc. 263 Ex. O at ¶ 4). Shortly thereafter, ATV hired Hooker and Anderson as foreman and assistant foreman, respectively. (Pl.'s Dep., Doc. 256 Ex. I at 79). Because ATV did not recruit Anderson in Texas, Anderson was not eligible for workers' compensation under the extraterritorial jurisdiction provision of the Texas Labor Code. Accordingly, his claims under Texas Insurance Code §§ 541.060 and 541.061 must fail.[5]

---

[5] Furthermore, the Court notes that Anderson claims he telephoned Judd *after* he started receiving Mississippi workers' compensation benefits. "An injured employee who elects to pursue the employee's remedy

IV. Conclusion

For the reasons stated above, the Court hereby ORDERS that the defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 253) and supplemental motion to dismiss for lack of subject matter jurisdiction (Doc. 273) are DENIED. The Court further ORDERS that the defendant's motion for summary judgment (Doc. 256) is GRANTED.

SIGNED at Houston, Texas, this 4th day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

under the workers' compensation laws of another jurisdiction and who recovers benefits under those laws may not recover under this subtitle." TEX. LAB. CODE § 406.075(a).